STATE OF NORTH CAROLINA v. ANTWAN L. ASH

No. COA07-1456

(Filed 4 November 2008)

**1. Homicide— first-degree murder based on felony murder— robbery with dangerous weapon—sufficiency of evidence— corroborating evidence supporting confession**

The trial court did not err by failing to dismiss the charges of first-degree murder and robbery with a dangerous weapon even though defendant contends his confession was the only evidence that the victim's property was taken and there was a lack of corroborating evidence to support the submission of this case to the jury because the State presented substantial independent evidence tending to support defendant's confession that permitted a reasonable inference that defendant unlawfully used a firearm to take the personal property of another and that a killing resulted during the perpetration of the crime.

**2. Criminal Law— voluntary intoxication—failure to give instruction**

The trial court did not commit plain error by failing to instruct the jury on voluntary intoxication as a defense to the charge of robbery with a dangerous weapon because: (1) evidence of mere intoxication is not enough to meet defendant's burden of production, and defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the pertinent crime defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming the requisite specific intent; (2) defendant failed to show that if the jury had received this in-

struction he would have been acquitted of the charge; (3) while there was some evidence that defendant killed the victim while intoxicated on "love boat" marijuana, there was no evidence as to exactly how much he consumed prior to the commission of the crime; and (4) there was abundant evidence that defendant acted with a clear purpose and design during the commission of the armed robbery, including defendant's statements to police that he left the scene and returned again to hide the victim's car and dead body, he drove the victim's car down the highway to a swamp to submerge the car in the water, and he grabbed a wad of money from the center console of the car as the car rolled toward the water.

**3. Constitutional Law— effective assistance of counsel—failure to object—failure to request instruction on voluntary intoxication**

Defendant did not receive ineffective assistance of counsel based on defense counsel's failure to object and request an instruction on voluntary intoxication with respect to the robbery with a dangerous weapon charge because: (1) the evidence presented at trial did not warrant a voluntary intoxication instruction with respect to the robbery with a dangerous weapon charge; and (2) it was improbable that the jury would have reached a different outcome if such instruction had been given.

Appeal by defendant from judgment entered 15 June 2007 by Judge Thomas D. Haigwood in Brunswick County Superior Court. Heard in the Court of Appeals 17 April 2008.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa Trippe, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara Blackman, for defendant appellant.*

McCULLOUGH, Judge.

Antwan L. Ash ("defendant") was tried before a jury at the 11 June 2007 Criminal Session of Brunswick County Superior Court after being charged with one count of first-degree murder and one count of robbery with a dangerous weapon. The State's evidence tended to show the following: In two videotaped interviews,[1] which took place on 31 October 2005 and 1 November 2005, defendant told law enforce-

---

1. These videotaped statements were played for the jury at trial.

ment that on 28 October 2005, defendant, who was sixteen years of age at the time, contacted the victim, Kendrick Lamar Sparrow, also called Burger ("Burger"), to buy drugs. Defendant had purchased drugs from Burger two or three times prior to this occasion. The drug purchase was scheduled to take place at defendant's house. Defendant borrowed a .40 caliber gun from his friend, Forty, and waited for Burger to arrive at defendant's house. Defendant explained that he always carried a gun with him during drug deals.

At approximately 8:00 p.m., defendant met Burger in the driveway of his house. Defendant was standing in front of the driver's side of Burger's vehicle, while Burger was seated inside of his vehicle. The drugs were in Burger's left hand. After some discussion about the price of the drugs, Burger bent down toward the floor of the vehicle. Defendant thought he saw "a little light shine" and suspected that Burger was going to try to rob him. Defendant pulled out the .40 caliber gun and fired between five to seven rounds at Burger. After that, Burger was not moving or breathing.

Defendant left the scene and went back to Forty's house to return the .40 caliber gun and retrieve a .22 caliber gun. Thereafter, defendant returned to Burger's vehicle and fired two rounds from the .22 caliber gun. According to defendant, he opened the driver's side door of Burger's four-door Pontiac Grand Prix and stepped up onto the running board. With his right foot on the gas pedal and left foot on the running board, defendant drove Burger's car down the highway toward Royal Oak Swamp. As the car rolled into the water, defendant grabbed a stack of $20 bills from the center console of the car, totaling between $450-$500, and jumped from the car. Defendant did not take any of the narcotics from Burger's vehicle.

After leaving Royal Oak Swamp, defendant met with his brother, Ben Ash, and his mother, Shirley Vereen. Defendant told them that he had killed Burger. Shortly thereafter, defendant and his brother checked in at the Microtel.

Later that evening, the Brunswick County Sheriff's Department was notified of the shooting. Lieutenant David Crocker testified that he found Burger's car 90 percent submerged in Royal Oak Swamp. Burger's body was removed from the vehicle. Police recovered cocaine and cigars from the water in the general area of Burger's vehicle; police did not recover any weapons from Burger, his vehicle, or the area where his vehicle was located.

The Sheriff Department's investigation revealed that the shots were fired near defendant's house. Police contacted defendant's mother, Shirley, on 31 October 2005. She advised law enforcement that her son had left Supply, spent a few nights in several motels, and was presently in Calabash. Police arrested defendant in Calabash, and defendant waived his *Miranda* and juvenile interrogation rights.

Based on defendant's interviews with police, Lieutenant Sam Davis ("Davis") retrieved five fired .40 caliber shell casings and two .22 shell casings in the driveway of defendant's house. On the same day, Davis also recovered a Ruger .40 caliber Smith & Wesson semi-automatic firearm from a wooded area across from Forty's residence. Firearm expert Beth Starosta-Desmond of the North Carolina Special Bureau of Investigation ("SBI") testified that the .40 caliber shell casings and the lead projectiles recovered from Burger's vehicle matched the .40 caliber gun.

Based on information provided to police by defendant's brother, Ben, Brunswick County Sheriff Tony Ciason retrieved a .22 caliber pistol from the side of the road near the crime scene. Lab tests revealed that the two .22 caliber shell casings were also a match to the .22 caliber pistol.

The State also introduced guest receipts from the Microtel Inn in Shallotte, North Carolina, and the Days Inn in Little River, South Carolina, respectively, which showed two rooms reserved on 28 October 2005, and two rooms reserved on 29 October 2005, in Shirley Vereen's name. These bills were paid in cash.

At the close of the State's evidence, the defense moved to dismiss the first-degree murder charge and the robbery with a dangerous weapon charge for insufficiency of the evidence. The trial court denied these motions.

Evidence for the defense tended to show the following: Dr. Moira Artigues, an expert in forensic psychiatry, diagnosed defendant as suffering from cannabis and alcohol dependence. Defendant told Dr. Artigues during an interview eighteen months after Burger's killing, that at the time of Burger's killing, defendant was under the influence of alcohol and "Love Boat," which is marijuana that has been soaked in formaldehyde. Dr. Artigues testified that defendant did not tell police about his intoxication during police interrogations because he was afraid that he would get his mother in trouble, as he had the year before when he told the Department of Social Services that his

mother gave him alcohol and marijuana. Defendant had witnessed violence between his parents, was beaten by his father, and was abandoned by his father at the age of twelve or thirteen. Thereafter, defendant and his family lived in hotel rooms and in a car. Dr. Artigues concluded that because of defendant's young age at the time of the killing and defendant's traumatic childhood, defendant suffered from impaired brain development and would not have been capable of forming a specific intent to kill at the time of the murder.

Inmate Edward Brock ("Brock") testified that he knew Burger and had purchased drugs from him in the past. Brock stated that at times Burger carried a gun in his car and that he recalled seeing Burger behave aggressively toward people in the community; however, he had never seen Burger threaten anyone with a gun nor was he aware of Burger having a reputation in the community for being aggressive.

At the close of the evidence, defendant renewed his motions to dismiss. These motions were denied. The jury unanimously found defendant guilty of first-degree murder, under the felony murder rule, and of robbery with a firearm. The trial court arrested judgment with respect to the robbery with a firearm charge, as defendant had been convicted of first-degree murder based only on the felony murder rule. Defendant was sentenced to life imprisonment without parole.

On appeal, defendant contends that (1) the trial court erred by failing to dismiss the charges of first-degree murder and robbery with a dangerous weapon for insufficiency of the evidence; (2) the trial court's failure to instruct the jury on voluntary intoxication as a defense to the charge of robbery with a dangerous weapon was plain error; and (3) defense counsel's failure to object and request an instruction on voluntary intoxication with respect to the robbery with a dangerous weapon charge constituted ineffective assistance of counsel.

I. Motion to dismiss

[1] First on appeal, defendant argues that the trial court erred by failing to dismiss the charges against defendant for insufficient evidence. Defendant contends that his confession was the only evidence that Burger's property was taken and that there was a lack of corroborating evidence to support the submission of this case to the jury. Defendant's argument is based upon the *corpus delicti* rule, articulated in *State v. Trexler*, 316 N.C. 528, 342 S.E.2d 878 (1986). We con-

clude, however, that defendant's reliance on this rule is misplaced, as there was substantial evidence upon which the jury could have reasonably concluded that defendant committed robbery with a dangerous weapon and felony murder based upon that robbery.

In ruling on a motion to dismiss, the trial judge must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *State v. Olson*, 330 N.C. 557, 564, 411 S.E.2d 592, 595 (1992). The Court must find that there is substantial evidence of each element of the crime charged and of defendant's perpetration of such crime. *Id.* "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.*

To convict a defendant of armed robbery, the State must prove three elements: " '(1) the unlawful taking or attempted taking of personal property from another; (2) the possession, use or threatened use of "firearms or other dangerous weapon, implement or means"; and (3) danger or threat to the life of the victim.' " *Matter of Stowe*, 118 N.C. App. 662, 664, 456 S.E.2d 336, 338 (1995) (citations omitted). The elements necessary to establish first-degree murder under the felony murder rule are that the killing took place while the accused was perpetrating or attempting to perpetrate one of the enumerated felonies. *State v. Richardson*, 341 N.C. 658, 666, 462 S.E.2d 492, 498 (1995).

Defendant is correct in his assertion that "a naked extrajudicial confession, uncorroborated by other evidence, is not sufficient to support a criminal conviction." *State v. Sloan*, 316 N.C. 714, 725, 343 S.E.2d 527, 534 (1986). The State must at least produce corroborative evidence, independent of defendant's confession, which tends to prove the commission of the charged crime. *Id.* In *State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985), our Supreme Court expanded the type of corroboration which may be sufficient to establish the trustworthiness of the confession in cases in which independent proof is lacking but where there is substantial independent evidence tending to establish the trustworthiness of the confession. In *Trexler*, our Supreme Court reasoned that the pre-*Parker* rule is "still fully applicable in cases in which there is some *evidence aliunde* the confession which, when considered with the confession, will tend to support a finding that the crime charged occurred." *Trexler*, 316 N.C. at 532, 342 S.E.2d at 380-81. Thus, our *corpus delicti* rule in such cases only requires evidence *aliunde* the confession which, when considered with the confession, supports the confession and permits a reason-

able inference that the crime occurred. It does not require that the evidence *aliunde* the confession prove any element of the crime. *Id.*

Here, the State introduced defendant's confession that defendant fired five to seven shots into Burger's car, leaving Burger for dead in the driver's seat; that defendant left the scene and then returned fifteen minutes later and drove Burger's car toward a pond; that just before the car reached the pond, defendant grabbed a wad of $20 bills from Burger's car and jumped out. In addition to defendant's confession, the State presented uncontroverted corroborating evidence at trial that the bullets removed from Burger's body matched the .22 caliber pistol recovered near the scene, that Detective Davis retrieved five .40 caliber shell casings and two .22 caliber shell casings from the driveway area where the killing took place, that a .40 caliber Ruger was recovered in a wooded area across the street from defendant's friend's house, and that immediately following the crime, on 28 October 2005 and 29 October 2005, defendant hid in hotel rooms, which were paid with cash and reserved in his mother's name. Thus, the State presented substantial independent evidence tending to support defendant's confession. This evidence permits a reasonable inference that defendant unlawfully used a firearm to take the personal property of another and that a killing resulted during the perpetration of such crime. As such, there was substantial evidence to support the armed robbery and felony murder charges. This assignment of error is overruled.

## II. Jury Instruction

**[2]** Next on appeal, defendant contends that the trial court's failure to instruct the jury on voluntary intoxication as a defense to the armed robbery charge amounted to plain error. The voluntary intoxication instruction was given as a possible defense to the premeditation and deliberation charge but not as a possible defense to the armed robbery charge. We disagree that the evidence necessitated such an instruction with respect to the armed robbery charge.

Since defendant did not object to the instructions at issue, any review is limited to plain error. *State v. Gaines*, 345 N.C. 647, 678-79, 483 S.E.2d 396, 415, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997). Only in a rare case will an improper instruction justify reversal of a criminal conviction when no objection was made at trial. *Id.* To find plain error, "the error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or [one] which probably resulted in the jury reaching a different verdict than

it otherwise would have reached.' " *State v. Collins,* 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (citation omitted).

Voluntary intoxication in and of itself is not a legal excuse for a criminal act. *State v. Gerald,* 304 N.C. 511, 521, 284 S.E.2d 312, 318 (1981). It is only a viable defense if the degree of intoxication is such that a defendant could not form the specific intent required for the underlying offense. *Id.* The specific intent required for the underlying offense of armed robbery is the intent to permanently deprive the owner of his property. *State v. Wheeler,* 122 N.C. App. 653, 656, 471 S.E.2d 636, 639 (1996).

In *State v. Baldwin,* 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992), our Supreme Court explained the proper usage of a voluntary intoxication instruction in the context of first-degree murder. It is "well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances." *Id.* Evidence of mere intoxication is not enough to meet defendant's burden of production. *State v. Mash,* 323 N.C. 339, 346, 372 S.E.2d 532, 537 (1988). Thus, before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried " 'defendant's mind and reason were so completely intoxicated and overthrown' " as to render him utterly incapable of forming the requisite specific intent. *State v. Golden,* 143 N.C. App. 426, 430, 546 S.E.2d 163, 166-67 (2001) (citation omitted). In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.

Defendant relies on *Golden* in support of his argument that the trial court erred by failing to give a voluntary intoxication instruction with respect to the armed robbery charge, but we conclude that the instant facts are distinguishable from those in *Golden.* In *Golden,* the defendant requested a voluntary intoxication instruction as to the specific offenses; however, here, defendant did not request that such instruction with respect to the armed robbery charge at issue. Thus, a different standard of review is applicable to the case *sub judice* than that which was applied in *Golden. See Golden,* 143 N.C. App. at 430-34, 546 S.E.2d at 166-68.

Although it is true that the jury found defendant not guilty of first-degree murder based on premeditation and deliberation, the

**STATE v. ASH**

[193 N.C. App. 569 (2008)]

burden, under a plain error review, is on defendant to show that absent any omission in the jury instructions, a different result would have been probable. Defendant has failed to show and we are not convinced that if the jury had been instructed on voluntary intox-·ication with respect to armed robbery, defendant would have been acquitted of that charge. While there was some evidence that defendant committed the killing while intoxicated on "love boat" marijuana, there was no evidence as to exactly how much he consumed prior to the commission of the crime at issue. Moreover, there is abundant evidence that defendant acted with a clear purpose and design during the commission of the armed robbery. According to defendant's statements to police, defendant left the scene and returned again to hide Burger's car and dead body. Defendant managed to drive Burger's car down the highway to Royal Oak Swamp and submerge the car in the water.

Moreover, while the evidence that defendant had been smoking love boat marijuana may have been sufficient to negate the specific intent of malice, premeditation, and deliberation, it is improbable that the jury would have found that "defendant's mind and reason were so completely intoxicated and overthrown" that he lacked the specific intent to permanently deprive Burger of his property when defendant grabbed the wad of money as the car rolled towards the water. This assignment of error is overruled.

### III. Ineffective Assistance of Counsel

**[3]** Finally, defendant contends that defense counsel's failure to object and request an instruction on voluntary intoxication with respect to the robbery with a dangerous weapon charge constituted ineffective assistance of counsel. As discussed above, the evidence presented at trial did not warrant a voluntary intoxication instruction with respect to the robbery with a dangerous weapon charge, and it is improbable that the trial would have resulted in a different outcome if such instruction had been given. As such, defense counsel's failure to request such an instruction did not prejudice defendant and did not constitute ineffective assistance of counsel. *See State v. Blakeney*, 352 N.C. 287, 307-08, 531 S.E.2d 799, 814-15 (2000), *cert. denied*, 531 U.S. 1117, 148 L. Ed. 2d 780, *cert. denied*, 359 N.C. 192, 607 S.E.2d 650 (2004) (Explaining that under the second prong of an ineffective assistance of counsel claim, defendant must show "the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error."). This assignment of error is overruled.

EDWARDS v. GE LIGHTING SYS., INC.

[193 N.C. App. 578 (2008)]

Based on the foregoing, we find no error in defendant's conviction.

No error.

Judges TYSON and STROUD concur.