NO. COA13-898

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

STATE OF NORTH CAROLINA

    v.                                      Forsyth County

LAMAR MONQUEE CARPENTER,
    Defendant.

Nos. 10CRS055309, 12CRS006417

Appeal by defendant from Judgments entered on or about 21 March 2013 by Judge V. Bradford Long in Superior Court, Forsyth County. Heard in the Court of Appeals 9 January 2014.

> *Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Aimee Margolis, for the State.*
>
> *Unti & Lumsden LLP, by Sharon L. Smith, for defendant-appellant.*

STROUD, Judge.

Lamar Carpenter ("defendant") appeals from judgments entered on or about 21 March 2013 after a Forsyth County jury found him guilty on two counts of robbery with a dangerous weapon and one count of possession of a firearm by a convicted felon. We conclude that defendant has failed to show error at his trial, but dismiss his ineffective assistance of counsel claim without prejudice to his ability to raise it by motion for appropriate relief.

I.   Background

On 7 February 2011, defendant was indicted in Forsyth County for robbery with a dangerous weapon. This indictment was superseded on 23 January 2012 by one charging two counts of robbery with a dangerous weapon and again on 13 August 2012 by indictments charging two counts of robbery with a dangerous weapon and one count of possession of a firearm by a felon. Defendant pled not guilty and the case proceeded to jury trial.

At trial, the State's evidence tended to show that on 23 April 2010, Ahmed Khabiry and Shafic Andraos were working at a gas station and convenience store in Winston-Salem. Mr. Khabiry was working as a manager and clerk, while Mr. Andraos, the owner of the store, was working in the back office. At around 9:00 or 9:30 that morning, a young man walked into the convenience store and attempted to use the ATM. Neither Mr. Khabiry nor Mr. Andraos recognized the man. That same man returned a few minutes later with a second man. Both men were wearing bandanas covering the lower half of their faces. Mr. Khabiry was outside sweeping the parking lot when he saw the men arrive. He started heading back inside to assist them when he noticed the first man was carrying a silver gun in his hand. Mr. Khabiry grabbed for the gun, but the second robber came up, pointed another silver gun

at him, and pushed him inside. The first robber took Mr. Khabiry back behind the counter to the cash register, while the second robber went back to the office where Mr. Andraos was working.

Mr. Khabiry recognized the second robber as one of his regular customers, who he had nicknamed "Big Money," but did not recognize the first robber. He recognized "Big Money" from his build and voice, and also from his tattoo. In court, Mr. Khabiry identified defendant as the second robber and the man he knew as "Big Money."

The first robber told Mr. Khabiry to open the cash register, which he did, and then demanded Mr. Khabiry hand over his wallet. When Mr. Khabiry informed the first robber that he did not have a wallet on him, the robber told him to hand over whatever money he had in his pocket, which amounted to five dollars. The second robber took about $6,700 from the back office, where Mr. Andraos had been preparing the store's cash for deposit. Both robbers then left the store and Mr. Khabiry called the police.

Around 5 May 2010, the police asked Mr. Khabiry to look at two photo arrays, one of which contained defendant's photograph. The arrays were administered by an officer with no connection to

the investigation and no knowledge of which photograph in the array was the suspect. Mr. Khabiry identified defendant as the regular customer who had robbed the store, stating he was "100 percent sure." He did not identify the man whom police suspected was the first robber.

Sometime in July 2010, defendant returned to the convenience store. Mr. Khabiry recognized him as the second robber and informed Mr. Andraos. Mr. Andraos went out to look at the car defendant was driving, wrote down the license plate number, and called the police. At trial, Mr. Andraos identified defendant as the man he saw in July whom Mr. Khabiry pointed out. Mr. Andraos testified that he noticed the same tattoo on defendant's arm in July as the one he saw on the second robber's arm, but that he did not really know defendant.

The State also introduced pictures taken of defendant while he was in jail that showed the tattoo on his right arm and still photographs taken by the store's surveillance cameras during the robbery. The surveillance camera photographs showed that the second robber had a tattoo on his forearm, but the photographs were not of sufficient quality to show the details of the tattoo.

At the close of the State's evidence, defendant moved to dismiss all of the charges against him and the trial court denied the motion. He then elected not to present evidence and renewed his motion to dismiss. Again, the trial court denied the motion. The jury found defendant guilty on two counts of robbery with a dangerous weapon and one count of possession of a firearm by a felon. The trial court sentenced defendant to two consecutive terms of 97-126 months imprisonment and one term of 19-23 months imprisonment. Defendant gave notice of appeal in open court.

## II.  Admission of Photographs

Defendant first argues that the trial court erred in admitting three photographs of him and his tattoos taken at the jail after his arrest. He contends that the photographs were not properly authenticated, not relevant, and that the trial court erred in denying his motion to exclude them under Rule 403. We hold that the trial court did not err in admitting the photographs.

A.  Standard of Review

At trial, defendant only objected to admission of the photographs under N.C. Gen. Stat. § 8C-1, Rule 403 (2011). Defendant did not raise either authentication or relevance

below, but asks us to review the trial court's denial of his motion to exclude the photographs on those grounds for plain error.

> For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

Defendant did object on the basis that the evidence was inadmissible under Rule 403. We review the trial court's determination under Rule 403 for an abuse of discretion. *State v. Cunningham*, 188 N.C. App. 832, 836-37, 656 S.E.2d 697, 700 (2008). "An abuse of discretion results only where a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *State v. Black*, 197 N.C. App. 731, 737, 678 S.E.2d 689, 693 (citation and quotation marks omitted), *app. dismissed*, 363 N.C. 657, 685

S.E.2d 108 (2009), *cert. dismissed*, 365 N.C. 208, 710 S.E.2d 38 (2011).

B.   Authentication

"Photographs may be used as substantive evidence upon the laying of a proper foundation, N.C.G.S. § 8-97, and may be admitted when they are a fair and accurate portrayal of the place in question and are sufficiently authenticated." *Sellers v. CSX Transp., Inc.*, 102 N.C. App. 563, 565, 402 S.E.2d 872, 873 (1991). A photograph is authentic if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2011).

Here, the photographs that defendant challenges are photographs taken of him, including his tattoo, while he was in custody in October 2010. Defendant argues that because the State introduced no evidence that defendant had that tattoo on 23 April 2010, the date of the robbery, the photographs were not what they purported to be. We disagree.

The custodial photographs did not purport to show defendant's arm at the time of the robbery. The photographs clearly show—and the State introduced them to show—that defendant had a tattoo on a particular place on his forearm at

the time the photograph was taken. The officer who took the photographs testified about the procedure used to take them and testified that they fairly and accurately depicted defendant's tattoo as it appeared in October 2010. Indeed, defendant does not contest that the photographs fairly and accurately depict defendant's arm while he was in custody. Therefore, there is no authentication issue with the photographs under either N.C. Gen. Stat. § 8C-1, Rule 901(a) or N.C. Gen. Stat. § 8-97.

C.   Relevance

Similarly, defendant argues that the custodial photographs were irrelevant because the State has failed to show that he had the tattoo on 23 April 2010. Defendant contends that the fact that he had a tattoo on his forearm in October 2010 is not probative at all as to identity. Again, we disagree.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2011). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989). A piece of evidence does not have to positively identify

the perpetrator to be relevant to the issue of identity. *See State v. Collins*, 35 N.C. App. 250, 252, 241 S.E.2d 98, 99 (1978) ("Under the facts in this case it was not necessary that the victim give testimony positively identifying the clothing as that worn by the robber, only that it was similar."); *State v. Bass*, 280 N.C. 435, 449, 186 S.E.2d 384, 394 (1972) (holding that testimony identifying the jacket the defendant was wearing at his arrest as similar to that of the perpetrator was relevant and admissible).

Here, the photographs of defendant's tattoo taken after his arrest were relevant to proving his identity as the perpetrator. Detective Clark did testify that he could not make out what the tattoo said, in the surveillance camera still photographs but noted that he could tell it was a tattoo. Additionally, the surveillance camera photographs clearly show the location and general dimensions of the tattoo of the second robber. It would be reasonable for a juror to conclude that the photographs taken after defendant's arrest show a tattoo in approximately the same location and approximately the same size as that of the second robber. That defendant had a tattoo on his forearm in October 2010 similar to that of the second robber is at least some evidence that he was the second robber. Such evidence makes it

"more probable" that defendant was the perpetrator "than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401. Therefore, the evidence is relevant to the issue of identity. *See Whiteside*, 325 N.C. at 397-98, 383 S.E.2d at 915-16 (holding that evidence that a pair of shoes owned by defendant matched the shoe prints found at the crime scene is relevant to identity, even if the witnesses were unsure if he was wearing those shoes on the night of the crime). "Once properly admitted, the weight to be given the evidence was a decision for the jury." *Id.* at 398, 383 S.E.2d at 916.

D. Rule 403

We have held that the photographs of defendant's tattoos were properly authenticated and relevant to identify the second robber. Now, we must address defendant's argument—the only one raised below—that the photographs are inadmissible under Rule 403 because "[a]ny probative value from the custodial photographs was outweighed by the danger of unfair prejudice and confusion of the issues."

Defendant first contends that the photographs had no probative value and tended to confuse the jury, largely repeating the same arguments made as to authentication and relevance. For the reasons discussed in the sections addressing

those arguments, this argument is similarly unconvincing. Next, defendant argues that the photographs were unfairly prejudicial because they showed him in a jail setting. Defendant fails to highlight anything in the photographs that clearly identify where they were taken other than "some type of institutional setting" and the reflections of two officers.

> While all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial. The meaning of unfair prejudice in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one.

*State v. Capers*, 208 N.C. App. 605, 617, 704 S.E.2d 39, 46 (2010) (citation and quotation marks omitted), *disc. rev. denied and app. dismissed*, 365 N.C. 187, 707 S.E.2d 236 (2011).

Here, the trial court admitted the photographs that it determined showed the least amount of information regarding the location, but excluded as cumulative one of the photographs that showed more of defendant's jail jumpsuit. The photographs admitted by the trial court did not clearly show defendant in jail garb or in handcuffs. The pictures only showed defendant in a white t-shirt in a cinderblock room with large windows. The trial court specifically found that it was unable to determine

from the pictures that they were taken in a jail. Therefore, we fail to see how the admission of these pictures was unfairly prejudicial.

Even to the extent that a juror could have deduced that the pictures were taken in a jail, the trial court did not abuse its discretion in determining that the unfair prejudice did not substantially outweigh the probative value. It is common knowledge that defendants charged with armed robbery are often arrested and that when people are arrested they are taken to jail. *See id.* at 614, 704 S.E.2d at 44-45 (noting that it is common knowledge that arrestees are handcuffed and citing *State v. Smith*, 278 Kan. 45, 49, 92 P.3d 1096, 1099-1100 (2004), which held that the "trial court did not err in admitting photographs of defendant in jail clothing because most jurors would hardly be shocked to learn that a murder suspect was taken into custody for some period of time, the only information communicated by jail clothing."). These photographs, at most, conveyed only the limited information that defendant had been arrested, taken to jail, and photographed. Therefore, we hold that the trial court did not abuse its discretion in overruling defendant's objection based on Rule 403 and did not err in admitting the photographs of defendant.

### III. Motion to Dismiss

Defendant argues that the trial court erred in denying his motion to dismiss because the State presented insufficient evidence identifying him as the second robber. We conclude that the trial court did not err in denying defendant's motion to dismiss.

A.   Standard of Review

> The standard of review for a motion to dismiss is well known. A defendant's motion to dismiss should be denied if there is substantial evidence of: (1) each essential element of the offense charged, and (2) of defendant's being the perpetrator of the charged offense. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. The Court must consider the evidence in the light most favorable to the State and the State is entitled to every reasonable inference to be drawn from that evidence. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.

*State v. Teague*, ___ N.C. App. ___, ___, 715 S.E.2d 919, 923 (2011) (citation omitted), *app. dismissed and disc. rev. denied*, 365 N.C. 547, 742 S.E.2d 177 (2012).

B.   Analysis

Defendant contends that there was insufficient evidence identifying him as the second robber. He cites a number of articles and cases from other states discussing the weaknesses

of eyewitness identification, especially when the identification is cross-racial and when a firearm is pointed at the eyewitness. Such arguments have no bearing on the sufficiency of the evidence when considering a motion to dismiss. If relevant at all, these arguments would go only to the credibility of an eyewitness identification. *See generally State v. Knox*, 78 N.C. App. 493, 496-97, 337 S.E.2d 154, 157 (1985) (holding that the exclusion of expert testimony on the reliability of eyewitnesses was within the trial court's discretion where the expert on voir dire only testified generally); *State v. Cotton*, 99 N.C. App. 615, 621-22, 394 S.E.2d 456, 459-60 (1990) (finding no abuse of discretion where the trial court concluded that general expert testimony on the reliability of eyewitnesses was unduly prejudicial to the State), *aff'd*, 329 N.C. 764, 407 S.E.2d 514 (1991).

The State called two eyewitnesses who were present at the time of the robbery—the store clerk, Mr. Khabiry, and the owner, Mr. Andraos. Mr. Khabiry testified that he recognized the second robber by his eyes and his voice as one of his regular customers both from working at the convenience store and from his previous business operating an ice cream truck in the area.[1] Although he

---

[1] Defendant, in his interview with a detective, confirmed that he

did not know the customer's name, Mr. Khabiry had been calling him "Big Money." He also testified that he recognized defendant as the second robber from his tattoo.[2] Further, as previously mentioned, although the surveillance video was not clear enough to positively identify what the second robber's tattoo said, it was clear enough for a reasonable juror to conclude that the robber's tattoo was in approximately the same location, and approximately the same size and shape, as defendant's tattoo.

Mr. Khabiry was later asked to do two photo lineups, one of which contained defendant's photograph, and one of which contained a photograph of the suspected first robber. He identified defendant's photograph as one of the robbers and as the man he knew as "Big Money." He indicated that he was 100% certain. In court, he again identified defendant as the second robber. The police officers who investigated the robbery confirmed that Mr. Khabiry had told them that he knew the second robber as "Big Money" and that he told them he recognized that

---

lived in that area and had been to the convenience store on a number of occasions.

[2] Mr. Khabiry testified that the tattoo was on the robber's hand, but when he was examining the photograph of the robber, marked as State's Exhibit 2, which clearly shows a tattoo on the robber's arm, he again described the tattoo as being on the robber's hand. Taken in the light most favorable to the State, this inconsistency could mean that Mr. Khabiry simply misspoke when he said the tattoo was on the second robber's "hand."

robber as a regular customer, but testified that he had not mentioned anything about a tattoo. Mr. Khabiry was unable to identify anyone as the first robber.

In July 2010, defendant drove up to the gas station and walked into the convenience store. Mr. Khabiry testified that he recognized defendant and told Mr. Andraos that he was the one who had robbed them. Mr. Andraos then went outside, took down the car's license plate number and called the police. Mr. Andraos did not recognize either of the robbers, but confirmed that Mr. Khabiry had identified defendant as the second robber when he returned to the store in July.

Defendant argues that this evidence is insufficient to identify him as the second robber because the eyewitnesses had not mentioned a tattoo when interviewed by the police and because there was no corroborating physical evidence. First, the argument about the witness' failure to mention the tattoo simply goes to the credibility of eyewitness' testimony. "The credibility of the witnesses and the weight to be given their testimony is exclusively a matter for the jury." *State v. Scott*, 323 N.C. 350, 353, 372 S.E.2d 572, 575 (1988) (citation omitted). Defendant's second argument is simply unconvincing. He was positively identified by Mr. Khabiry as the second robber.

Mr. Khabiry testified how he recognized defendant and identified him both in court and through an out-of-court photographic array. Additionally, it would be reasonable for a juror to conclude that the photographs from the day of the robbery show that the second perpetrator had a tattoo consistent with defendant's. Taken in the light most favorable to the State, the above evidence is sufficient to convince a reasonable juror that defendant was one of the perpetrators of the armed robbery. *See State v. Mobley*, 86 N.C. App. 528, 532, 358 S.E.2d 689, 691 (1987) (holding that eyewitness identification of defendant as the perpetrator is sufficient to defeat a motion to dismiss on the basis of identity). Therefore, the trial court did not err in denying defendant's motion to dismiss. *See Teague*, ___ N.C. App. at ___, 715 S.E.2d at 923.

## IV. Ineffective Assistance of Counsel

Defendant next argues that he received ineffective assistance of counsel, in violation of his Sixth Amendment rights, when his trial counsel failed to cross-examine the two eyewitnesses with prior inconsistent statements they had made to police and the prosecutor.

> As a general proposition, claims of ineffective assistance of counsel should be considered through motions for appropriate relief and not on direct appeal. It is well

established that ineffective assistance of counsel claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing. Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing defendants to bring them pursuant to a subsequent motion for appropriate relief in the trial court.

*State v. Hernandez*, ___ N.C. App. ___, ___, 742 S.E.2d 825, 830 (2013) (citations, quotation marks, and brackets omitted).

Defendant asserts that there was no possible strategic reason that his trial counsel would fail to cross-examine the eyewitnesses on any prior inconsistent statements they made. The State counters that there were a number of possible strategic reasons that defendant's trial counsel would elect not to cross-examine the witnesses using those prior statements. As we cannot resolve this dispute on the cold record before us, we dismiss defendant's ineffective assistance claim as premature without prejudice to his ability to raise it through a motion for appropriate relief.

V. Conclusion

For the foregoing reasons, we conclude that the trial court did not err in admitting the photographs of defendant and his tattoos taken at the jail and that the trial court did not err in denying defendant's motion to dismiss. We dismiss defendant's ineffective assistance of counsel claim without prejudice to his ability to raise it by motion for appropriate relief.

NO ERROR; DISMISSED in part.

Judges HUNTER, JR., Robert N. and DILLON concur.