BRYANT, Judge.
Where defendant failed to establish the State acted in bad faith by disposing of potential impeachment evidence, we the affirm the trial court's denial of defendant's motion to dismiss. Where the evidence did not support an instruction on voluntary intoxication, the trial court did not commit plain error in failing to instruct the jury. And where the publication of a photo of defendant's identifying tattoo was not substantially more prejudicial than probative, we affirm the trial court's ruling.
On 1 June 2015, defendant Juan Antonia Miller was indicted for first-degree murder. The matter came on for trial 6 February 2017 in Guilford County Superior Court, the Honorable Eric C. Morgan, Judge presiding.
Three days before trial, defendant filed a motion to dismiss for failure to preserve evidence. Through the discovery process, defendant learned that law enforcement officers had access to and had reviewed audio recordings of 157 telephone conversations initiated by State witness Michael Devone Keel (hereinafter Michael) made from the High Point Jail to another State witness-Michael's wife, Stephanie Grant Keel (hereinafter Stephanie). At the time of trial, almost two years later, the recordings were no longer available. The trial court entered a written order denying defendant's motion to dismiss.
The evidence at trial tended to show that during the early morning hours of 25 April 2015, Michael and Jamil Booker (the victim) went to a party. Defendant, who was at the party, asked Michael for a ride home. Defendant got in the backseat behind Booker and Michael drove. After riding less than a mile, defendant, who had shown no animosity toward Booker at the party or in the car, shot Booker in the back of the head. Defendant then had Michael drive to Michael's house where he told Michael's wife, Stephanie, that he had killed Booker. Then, after threatening to kill everyone in the house, including their children, defendant had Michael go with him to dump Booker's body.
Once Michael returned, Stephanie called a law enforcement officer who directed them to go to a hotel and "lay low." However, on the way to the hotel, Michael and Stephanie were pulled over for a traffic stop and arrested on the basis of outstanding warrants.
Law enforcement officers discovered blood spatter in the interior of Michael's car and a shell casing in the back seat. A search of defendant's residence revealed jeans and a shirt that had blood stains. A forensic scientist with the State Bureau of Investigation testified that DNA from the blood stains on the shirt found in defendant's residence matched Booker's DNA.
Defendant presented three witnesses, each of whom testified to observing defendant in possession of a handgun after Booker was killed.
The jury was instructed on first-degree murder based on malice, premeditation, and deliberation, and the felony murder rule; and second-degree murder. The jury returned a verdict finding defendant guilty of first-degree murder based upon malice, premeditation, and deliberation. The trial court entered judgment in accordance with the jury verdict and sentenced defendant to a term of life imprisonment without parole.
Defendant appeals.
_________________________
On appeal, defendant argues the trial court (I) erred by denying his pre-trial motion to dismiss; (II) committed plain error by failing to give an instruction on voluntary intoxication; and (III) erred by allowing the State to show a photo of defendant's abdominal tattoo, "SWAMP N***A."
I
Defendant argues that the trial court erred by denying defendant's pretrial motion to dismiss because the State failed to disclose known Giglio[1] evidence that would have impeached the State's only eyewitness. We disagree.
A. Standard of Review
In reviewing a trial court's ruling on a motion to dismiss, this Court is "limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." State v. Williams , 362 N.C. 628, 632, 669 S.E.2d 290, 294 (2008) (citation omitted). "The decision that a defendant has satisfied the elements of N.C. Gen. Stat. § 15A-954(a)(4) [ ('[t]he defendant's constitutional rights have been flagrantly violated ...') ], and thus is entitled to a dismissal, is a conclusion of law reviewable de novo ." State v. Dorman , 225 N.C. App. 599, 619-20, 737 S.E.2d 452, 466 (2013). "The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable. The crucial inquiry for this Court is admissibility and whether the ultimate ruling was supported by the evidence." State v. Bone , 354 N.C. 1, 8, 550 S.E.2d 482, 486 (2001) (citation omitted).
B. Materiality
Pursuant to our General Statutes, section 15A-954, a defendant is entitled to dismissal of the charges stated in the criminal pleading against him if his "constitutional rights have been flagrantly violated and there is such irreparable prejudice to the defendant's preparation of his case that there is no remedy but to dismiss the prosecution." N.C.G.S. § 15A-954(a)(4) (2017). However, dismissal is a "drastic" form of relief to be "granted sparingly." State v. Joyner , 295 N.C. 55, 59, 243 S.E.2d 367, 370 (1978).
Defendant contends that the State's failure to preserve and turn over recordings of Michael's telephone calls from jail "flagrantly violated" his right to due process in accordance with Brady v. Maryland , 373 U.S. 83, 10 L.Ed. 2d 215 (1963), and Giglio v. United States , 405 U.S. 150, 31 L.Ed. 2d 104 (1972).
As the movant, a defendant bears the burden of showing both the "flagrant constitutional violation" and irreparable prejudice. Williams , 362 N.C. at 634, 669 S.E.2d at 295. "To establish a Brady violation, a defendant must show (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." State v. McNeil , 155 N.C. App. 540, 542, 574 S.E.2d 145, 147 (2002) (citing Brady , 373 U.S. at 87, 10 L.Ed. 2d at 218 ). "Favorable" evidence can be either exculpatory or useful in impeaching the State's evidence. Williams , 362 N.C. 628 at 636, 669 S.E.2d at 296. "Evidence is considered 'material' if there is a 'reasonable probability' of a different result had the evidence been disclosed." State v. Berry , 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002) (citing Kyles v. Whitney , 514 U.S. 419, 434, 131 L.Ed. 2d 490, 506 (1995) ); see also United States v. Bagley , 473 U.S. 667, 682, 87 L.Ed. 2d 481, 494 (1985) (holding that whether the prosecutorial failure to disclose was the result of no request, a general request, or even a specific request, "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs , 427 U.S. 97, 109-10, 49 L.Ed. 2d 342, 353 (1976) (emphasis added), holding modified by Bagley , 473 U.S. 667, 87 L.Ed. 2d 481. "[A] 'reasonable probability ' is a probability sufficient to undermine confidence in the outcome." Bagley , 473 U.S. at 682, 87 L.Ed.2d at 494 (emphasis added).
In Dorman , this Court acknowledged that the failure to disclose material evidence diminishes confidence in the outcome of a trial.
However, when the evidence is only "potentially useful" or when " 'no more can be said [of the evidence] than that it could have been subjected to tests, the results of which might have exonerated the defendant,' " the State's failure to preserve the evidence does not violate the defendant's constitutional rights unless a defendant can show bad faith on the part of the State. State v. Mlo , 335 N.C. 353, 373, 440 S.E.2d 98, 108 (1994), cert. denied , 512 U.S. 1224, (1994) (quoting Arizona v. Youngblood , 488 U.S. 51, 57 (1988) ).
225 N.C. App. 599, 620-21, 737 S.E.2d 452, 466 (2013).
In January 2017, defendant's counsel reviewed the State's discovery and learned that law enforcement officers had undisclosed recordings of jail phone calls between two eye witnesses for the State. Defendant immediately requested the recordings but was informed they were no longer available.
On 3 February 2017, defendant filed a motion to dismiss the charges against him based on Brady , 373 U.S. 83, 10 L.Ed. 2d 215, and State v. Williams , 190 N.C. App. 301, 660 S.E.2d 189 (2008) (affirming the trial court's dismissal of a defendant's felonious assault charges based upon a flagrant violation of the defendant's due process rights under Brady ). The matter was heard 6 February 2017 during a pretrial hearing.
Defendant argued that while the State may contend the content of the phone calls did not go directly to the matter to be tried before the court, the content of the conversations described by law enforcement officers who heard the recordings supported defendant's claim that State witnesses "[Michael] and [Stephanie] [we]re not trustworthy, that they were playing both sides of the fence with law enforcement, and they would say things to law enforcement that were not true, and they were doing something else[, such as dealing drugs,] on the side." However, defendant asserted "[he was] certainly not accusing [the State ] of any bad intent here . [The State] did provide me with copies of the spreadsheet that show when the calls were made. But obviously, the most important thing for us is the content[ ], and that's just gone." (emphasis added).
It appears that based on the arguments presented during the pretrial hearing, in essence the content of the calls would be only "potentially useful" or, at most, might have aided in exonerating defendant. Dorman , 225 N.C. App. at 620-21, 737 S.E.2d at 466. As such, defendant fails to establish materiality of constitutional import. See Bagley , 473 U.S. 667, 87 L.Ed. 2d 481 ; Agurs , 427 U.S. at 109-10, 49 L.Ed. 2d at 353 ("The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."). (emphasis added). Moreover, as defendant does not contend that the State's failure to preserve the jail phone call recordings was a consequence of the State's bad intent or bad faith, "the State's failure to preserve the evidence does not violate the defendant's constitutional rights [under Brady , 373 U.S. 83, 10 L.Ed. 2d 215 ]." Dorman , 225 N.C. App. at 620-21, 737 S.E.2d at 466 (citing Mlo , 335 N.C. at 373, 440 S.E.2d at 108 ).
We note that during defendant's trial, defendant was able to cross-examine Michael, Stephanie, and a law enforcement officer who listened to the phone call recordings. Michael testified to dealing "crack" cocaine, acknowledged his status as a felon, described having his residence raided by police, and disclosed that while he was in jail, he called his wife, Stephanie, and instructed her on how to sell drugs. Michael further testified that while he was in jail he was charged with trafficking in cocaine which carried a mandatory minimum sentence of thirty-five months which could be reduced if he provided law enforcement with "substantial assistance" in bringing other charges. Detective Nero testified to the content of a conversation she had with Michael during which Michael "made a promise to God that he wouldn't sell drugs anymore," but the detective cautioned Michael about making that promise because she had been listening to the audio recordings of his jail phone calls and knew that he had been instructing his wife, Stephanie, on how to conduct drug sales.
Defendant's strongest argument-that the audio recordings of the phone calls were necessary to impeach Michael's credibility-is also his least effective argument. The trial court found, based on competent evidence, that there was no reason to infer that defendant's access to the audio recordings of the phone calls would have affected the jury's opinion as to Michael's credibility.
During closing argument defendant argued that "[t]his case turns on whether or not you believe what Michael Keel says." He attacked Michael's credibility arguing that Michael was "work[ing] the system" in order to stay out of prison. Thus we note that defendant was able to impeach Michael's credibility despite the absence of recorded jail phone calls between Michael and Stephanie.
For these reasons, defendant's argument is overruled.
II
Defendant next argues that the trial court erred by failing to give a voluntary intoxication instruction to the jury. Defendant also alternatively contends that his trial counsel's failure to request an instruction on voluntary intoxication amounts to ineffective assistance of counsel. We disagree with both arguments.
A. Standard of Review
Because defendant did not object to the jury instructions, review is limited to plain error. State v. Ash , 193 N.C. App. 569, 575, 668 S.E.2d 65, 70 (2008). "[P]lain error review is limited to errors in a trial court's jury instructions or a trial court's rulings on admissibility of evidence." State v. Coleman , 227 N.C. App. 354, 357, 742 S.E.2d 346, 348 (2013) (alteration in original).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]"
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations omitted) (first alteration in original).
B. Instruction on Voluntary Intoxication
In State v. Baldwin , 330 N.C. 446, 412 S.E.2d 31 (1992), our Supreme Court explained the proper usage of a voluntary intoxication instruction in the context of first-degree murder. "It is well established that specific intent to kill is a necessary constituent of the elements of premeditation and deliberation in first degree murder, and a showing of legal intoxication to the jury's satisfaction will mitigate the offense to murder in the second degree." State v. Baldwin , 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992) (citation omitted). However, it is equally well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances. See, e.g., State v. Strickland , 321 N.C. 31, 361 S.E.2d 882 (1987) ; State v. McLaughlin , 286 N.C. 597, 213 S.E.2d 238 (1975), vacated in part , 428 U.S. 903, 49 L.Ed. 2d 1208 (1976) ; State v. Doss , 279 N.C. 413, 183 S.E.2d 671 (1971), sentence vacated and the matter remanded, 408 U.S. 939, 33 L.Ed.2d 762 (1972).
Voluntary intoxication in and of itself is not a legal excuse for a criminal act. State v. Gerald , 304 N.C. 511, 521, 284 S.E.2d 312, 318 (1981). In order to support a defense of voluntary intoxication, substantial evidence must be presented to show that at the time of the killing the defendant was so intoxicated that he was "utterly incapable of forming a deliberate and premeditated purpose to kill." Strickland , 321 N.C. at 41, 361 S.E.2d at 888 (quoting State v. Medley , 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978) ). In the absence of evidence of intoxication to this degree, a trial court is not required to charge the jury on the defense of voluntary intoxication. Id. at 41-42, 361 S.E.2d at 888 ; see also Baldwin , 330 N.C. at 462-63, 412 S.E.2d at 41 (holding the defendant failed to present evidence sufficient to support an instruction on voluntary intoxication where despite evidence of consuming beer, marijuana, and cocaine earlier in the day defendant testified that at the time the shooting was committed "[he] wasn't high"); Ash , 193 N.C. App. at 577, 668 S.E.2d at 71 (holding no plain error in failing to instruct the jury on voluntary intoxication where there was no evidence as to how much the defendant consumed prior to the commission of the criminal offense and there was significant evidence that the defendant acted with "a clear purpose and design").
Here, there was ample evidence to indicate that defendant operated with deliberation and premeditation. While we note Michael's testimony that defendant looked "[c]razy, man[,] [h]is eyes was real big" and Stephanie's statements that she smelled alcohol on "Swamp" and that he exhibited symptoms of being intoxicated by cocaine, there was no evidence of how much defendant consumed, when he consumed it, or to what degree he was impaired. There was substantial evidence that following Booker's shooting, defendant operated with a clear purpose: immediately after the shooting, he ordered Michael, who was in a state of panic, to "not wreck the car," to not alert law enforcement, and when Michael's car needed fuel, defendant accompanied Michael into a gas station; defendant ordered Michael to take him to Michael's house, where defendant knew Stephanie and the kids were; defendant threatened the life of everyone in Michael and Stephanie's home if Michael did not assist defendant in disposing of Booker's body; and defendant carried through with the plan to dump Booker's body while threatening Michael's life if he disclosed that defendant killed Booker.
We hold there was no evidence of intoxication to such an extent that defendant was incapable of forming a deliberate and premediated purpose to kill. To the contrary, there is significant evidence of defendant's cool state of mind and deliberate actions. Thus, the trial court was not required to give an instruction for voluntary intoxication. Accordingly, defendant's argument is overruled.
C. Ineffective Assistance of Counsel
Alternatively, defendant contends that defense counsel's failure to request an instruction on voluntary intoxication with respect to his first-degree murder charge constituted ineffective assistance of counsel.
As stated in Ash ,
the evidence presented at trial did not warrant a voluntary intoxication instruction with respect to the robbery with a dangerous weapon charge, and it is improbable that the trial would have resulted in a different outcome if such instruction had been given. As such, defense counsel's failure to request such an instruction did not prejudice defendant and did not constitute ineffective assistance of counsel.
193 N.C. App. at 577, 668 S.E.2d at 71. Given the evidence in the instant case, as in Ash , defense counsel's failure to request a voluntary intoxication instruction did not constitute ineffective assistance of counsel. Accordingly, defendant's argument is overruled.
III
Finally, defendant contends that the trial court erred by allowing the State to publish to the jury a photograph of defendant displaying a prominent tattoo depicting the words "SWAMP N***A" across his abdomen. Defendant argues that the shirtless photograph was irrelevant under Rule 401 and "overly prejudicial" under Rule 403. We disagree.
A. Standard of Review
Defendant objected to the admission of the photo before the trial court. Whether evidence is relevant is a question of law, reviewed de novo. State v. Kirby , 206 N.C. App. 446, 456, 697 S.E.2d 496, 503 (2010). A trial court's Rule 403 determination is reviewed for abuse of discretion. State v. Beckelheimer , 366 N.C. 127, 130, 726 S.E.2d 156, 158 (2012).
B. Relevancy
" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2017). "Although the rule speaks in terms of relevancy, the definition includes what is often referred to in our courts as materiality."Id . Official Commentary. "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." State v. Whiteside , 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (citation omitted).
"In a criminal case, the identity of the perpetrator of the crime charged is always a material fact." State v. Jeter , 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990) (citation omitted). However, identity is not always an issue. State v. Johnson , 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1986), superseded by statute , N.C.G.S. § 8C-1, Rule 404(b), on other grounds as recognized in State v. Jeter , 326 N.C. 457, 389 S.E.2d 805 (1990). Accordingly, before evidence of identity is admissible, "there must be a determination of whether the identity of the perpetrator is at issue." State v. White , 101 N.C. App. 593, 600, 401 S.E.2d 106, 110 (1991) (citation omitted).
Here, defendant's identity-and especially his going by the nickname "Swamp"-was a material fact in issue. Defendant pled not guilty and did not testify. During opening argument, the prosecutor told the jury that defendant went by the unlikely nickname of "Swamp." Michael in fact used that name to describe defendant throughout his testimony, including the crucial portions regarding Booker's murder. Stephanie likewise testified that Michael had used the name "Swamp" when describing defendant.
At trial, two photographs comprising Exhibit 20 were published to the jury. Only the second photograph showed defendant without a shirt-thereby displaying defendant's prominent "SWAMP N***A" abdominal tattoo. The State elaborated to the trial court outside of the presence of the jury that:
[Defendant] has been identified by several folks of going by a nickname of Swamp, S-W-A-M-P. And because he has that tattooed across his midsection, [the] [S]tate found it to be relevant for those purposes to help identify not only the defendant, but also identify the fact that he would-it would be reasonable to believe that he goes by that nickname.
Notably, defense counsel made no reference to defendant going by the nickname "Swamp" during opening statement, and none of the defense witnesses identified defendant by that name.
Notwithstanding defendant's assertion on appeal that he "never denied his nickname was 'Swamp' " or that others identified him as "Swamp," "photographs are rendered no less relevant simply because a witness testifies as to what the photographs in fact depict." State v. Marlow , 310 N.C. 507, 522, 313 S.E.2d 532, 541 (1984) (citation omitted). That defendant had a prominent "SWAMP N***A" tattoo was plainly relevant to proving defendant's identity as the perpetrator-who was repeatedly referred to by Michael and Stephanie as "Swamp"; it made it "more probable" that defendant was the perpetrator "than it would be without the evidence." State v. Carpenter , 232 N.C. App. 637, 642, 754 S.E.2d 478, 482 (2014) (quoting N.C. Gen. Stat. § 8C-1, Rule 401 ). Even the authenticating police officer testified that taking shirtless photographs is standard procedure specifically because tattoos assist in identification.
C. Prejudice
Relevant evidence may nevertheless "be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." N.C. Gen. Stat. § 8C-1, Rule 403 (2017). However, because "all evidence offered against a party involves some prejudicial effect, the fact that evidence is prejudicial does not mean that it is necessarily unfairly prejudicial." State v. Capers , 208 N.C. App. 605, 617, 704 S.E.2d 39, 46 (2010) (citation omitted). "The meaning of unfair prejudice in the context of Rule 403 is an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." State v. Rainey , 198 N.C. App. 427, 433, 680 S.E.2d 760, 766 (2009) (citation omitted).
Defendant relies on Buck v. Davis , 580 U.S. ----, 197 L.Ed.2d 1 (2017), wherein the United States Supreme Court held that defense counsel provided ineffective assistance of counsel when counsel called as an expert a witness who testified consistent with his reports that the defendant's race "disproportionately predisposed him to violent conduct." Id. at ----, 197 L.Ed. 2d at 18. Such "expert" testimony is clearly prejudicial.
However, defendant's reliance on Buck is misplaced. Here, defendant's tattoo, while relevant to prove his identity, does not imply defendant's guilt or that he is more likely to commit a violent offense. Thus, the probative value of defendant's tattoo is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. See N.C. Gen. Stat. § 8C-1, Rule 403. Therefore, defendant fails to establish unfair prejudice. Accordingly, we affirm the trial court's ruling to allow publication of photos of defendant's tattoo.
NO ERROR.
Report per Rule 30(e).
Judges CALABRIA and HUNTER, JR., concur.

Named after the United States Supreme Court's decision in Giglio v. United States , 405 U.S. 150, 31 L.Ed. 2d 104 (1972), holding that "Brady v. Maryland , [373 U.S., 83, 87, 10 L.Ed. 2d 215, 218 (1963) ] held that suppression of material evidence justifies a new trial irrespective of the good faith or bad faith of the prosecution. When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." Giglio , 405 U.S. at 153-54, 31 L.Ed. 2d at 108 (emphasis added).