IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-554

Filed: 21 January 2020

Guilford County, Nos. 17 CRS 90710-711

STATE OF NORTH CAROLINA

v.

FAYE LARKIN MEADER, Defendant.

Appeal by defendant from judgments entered 19 December 2018 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 5 December 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew Baptiste Holloway, for the State.*

*The Green Firm, PLLC, by Bonnie Keith Green, for defendant-appellant.*

YOUNG, Judge.

Where the evidence, taken in the light most favorable to the defendant, did not show that defendant was so intoxicated as to be incapable of forming intent, the trial court did not err in denying defendant's request to instruct the jury on voluntary intoxication or diminished capacity. We find no error.

<u>I. Factual and Procedural Background</u>

The relevant and undisputed facts of this case are as follows: On 22 November 2017, Faye Larkin Meader (defendant) arrived at the office of Family Solutions, appearing and behaving in an intoxicated manner. Law enforcement was contacted

to remove her from the premises. While defendant was present, clients at Family Solutions discovered their car door open. Several items of personal property were missing from the vehicle, and when police arrived to detain defendant, they discovered them on her person. On 24 September 2018, defendant was indicted for felony breaking or entering a motor vehicle, misdemeanor larceny, and misdemeanor possession of stolen goods or property.

Prior to trial, defendant filed notice of intent to offer the defense of voluntary intoxication or diminished capacity. The matter proceeded to trial. At the jury charge conference, defendant requested an instruction on voluntary intoxication or diminished capacity, on the basis that "each and every witness testified that Ms. Meader was intoxicated." The trial court denied this request.

The jury returned verdicts finding defendant guilty on all three charges. The trial court sentenced defendant to 30 days imprisonment on the charge of misdemeanor larceny, and entered a suspended sentence of 30 months, to begin upon defendant's release from prison on the charges of larceny and breaking or entering a motor vehicle. Having entered sentences on those two charges, the trial court arrested judgment on the charge of possession of stolen goods.

Defendant appeals.

## II. Standard of Review

"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo* by this Court." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). "When determining whether the evidence is sufficient to entitle a defendant to jury instructions on a defense or mitigating factor, courts must consider the evidence in the light most favorable to defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988).

### III. Request for Jury Instruction

In her sole argument on appeal, defendant contends that the trial court erred in denying her request for a jury instruction on voluntary intoxication. We disagree.

"Voluntary drunkenness is not an excuse for a criminal act, but in certain instances, it may be sufficient to negate the requisite intent element of a crime." *State v. Kyle*, 333 N.C. 687, 698, 430 S.E.2d 412, 418 (1993). "Where a specific intent element is an essential element of the offense charged, voluntary intoxication may negate the existence of that intent." *Id.* at 698-99, 430 S.E.2d at 418. "Evidence of mere intoxication, however, is not enough to meet defendant's burden of production. He must produce substantial evidence which would support a conclusion by the judge that he was so intoxicated that he could not form [the requisite intent]." *Mash*, 323 N.C. at 346, 372 S.E.2d at 536.

> The evidence must show that at the time of the [alleged crime] the defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming [the requisite intent]. *State v. Shelton*,

- 3 -

> 164 N.C. 513, 79 S.E. 883 (1913). In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon. *State v. McLaughlin*, 286 N.C. 597, 213 S.E.2d 238 (1975). The question then, in this case, is whether there was evidence that defendant was intoxicated to such extent that he was utterly incapable of forming a specific intent to [commit the crime charged] so as to require an instruction on intoxication by the trial judge.

*State v. Medley*, 295 N.C. 75, 79-80, 243 S.E.2d 374, 377 (1978).

In the instant case, defendant contends that, "viewed in a light most favorable to her, there was substantial evidence that her mind and reason were so completely intoxicated and overthrown as to render her utterly incapable of forming the requisite intent for felony breaking and entering a motor vehicle and misdemeanor larceny and possession of stolen goods."

In support of this position, defendant notes that the original call to which police responded was "a dispatch of an intoxicated subject[,]" and that an officer testified that, when he first encountered defendant, "she just appeared to be either intoxicated or impaired by an illegal substance." The officer further testified that defendant, while inside of a business and in front of witnesses, pulled down her pants to display a bruise on her groin. Defendant also notes that the witness who called police said defendant "seemed intoxicated[;]" that another witness testified that defendant seemed "a little disoriented, agitated[,]" and "[h]er speech, her kind of line of thinking was going in a lot of different directions[;]" and that another witness described her

peculiar, giggling behavior and unusual conversational topics. Defendant also cites additional testimony and evidence that she was incoherent, that she may have been hallucinating, and that she smelled of alcohol.

The State notes, however, that this paints an incomplete picture of the evidence at trial. While officers were initially called to deal with an intoxicated individual, and a number of witnesses described defendant as such, defendant was not arrested for intoxication. To the contrary, one of the witnesses observed that, while defendant appeared "agitated," she was "fairly cooperative" in response to questioning, and was "just answering" the questions put to her by officers. Moreover, evidence showed that she was aware of her circumstances. Once officers had placed her in custody for the possession of stolen goods, and had placed her in the back of the police car, she asked witnesses, "don't let them . . . take me to jail."

Defendant cites *State v. Keitt* for the principle that her voluntary intoxication served as a defense to the felonious intent required in the crimes charged, and that it was error to deny her request for a jury instruction. *See State v. Keitt*, 153 N.C. App. 671, 571 S.E.2d 35 (2002), *aff'd per curiam,* 357 N.C. 155, 579 S.E.2d 250 (2003). However, the facts of that case are distinguishable. In *Keitt*, a witness testified that the defendant "was so intoxicated that he was unable to ride a bicycle or even walk home on his own[;]" another witness testified that the defendant "was barely able to stand on his own[;]" and another witness testified that the defendant "had trouble

navigating and fumbled with the door and the screen door[.]" *Id*. at 677, 571 S.E.2d at 39. In the instant case, by contrast, there was no testimony that defendant stumbled or suffered from limited mobility, nor even that her speech was slurred. Rather, the evidence merely suggested that she smelled of alcohol and was behaving somewhat erratically.

We hold that the facts of this case are, instead, more closely aligned with those of *State v. Wilson-Angeles*, ___ N.C. App. ___, 795 S.E.2d 657 (2017). In that case, as in this case, the defendant argued that the evidence was sufficient to entitle her to an instruction on voluntary intoxication. In support of this argument, the defendant cited "various behaviors exhibited by Defendant on the night in question, including, *inter alia*, yelling profanities, inexplicably singing hymns, claiming to be the victim, attempting to take her shirt off to show law enforcement an injury, and passing out at the police department." *Id*. at ___, 795 S.E.2d at 666. We held, however, that while the evidence did show that the defendant "was intoxicated to some degree[,]" it was insufficient to entitle her to a voluntary intoxication instruction. *Id*. We went on to note that the evidence "did not establish how much alcohol Defendant had consumed prior to committing the crime at issue, which case law suggests is information of significant consequence to the determination of whether a defendant is entitled to a voluntary intoxication instruction." *Id*. Nor did the evidence "tend to show the length of time over which Defendant had consumed alcohol before committing the [crime] in

this case, a showing which must be made before a defendant is entitled to this instruction." *Id.* We therefore held that defendant was "not entitled to a voluntary intoxication instruction." *Id.* at ___, 795 S.E.2d at 667.

Our reasoning in *Wilson-Angeles* was not novel. In *State v. Ash*, 193 N.C. App. 569, 577, 668 S.E.2d 65, 71 (2008), this Court held that while there was some evidence that the defendant was intoxicated while committing the crime charged, "there was no evidence as to exactly how much he consumed prior to the commission of the crime at issue[,]" which, taken with other evidence in that case, supported the trial court's decision not to instruct the jury on voluntary intoxication. Similarly, in *State v. Geddie*, 345 N.C. 73, 95, 478 S.E.2d 146, 157 (1996), *cert. denied*, 522 U.S. 825, 139 L. Ed. 2d 43 (1997), our Supreme Court held that "[e]vidence tending to show only that defendant drank some unknown quantity of alcohol over an indefinite period of time before the murder does not satisfy the defendant's burden of production."

Defendant is correct that there was ample evidence of defendant's intoxication at the time of the offenses charged. However, mere intoxication is not sufficient to establish voluntary intoxication as a defense to the formation of intent. As in *Wilson-Angeles*, *Ash*, and *Geddie*, there was no evidence in the instant case of how much defendant had consumed, or over what period. There was also insufficient evidence that defendant was so severely intoxicated, beyond mere inebriation, that she was

incapable of comprehending her surroundings or acting on her own, let alone forming the intent to commit a crime.

Defendant further contends that the trial court erred in permitting the State to improperly shift its burden onto defendant with its closing argument. However, defendant failed to raise timely objection to the State's closing argument, thus failing to preserve it for review. Moreover, defendant has failed to argue that this constituted plain error. *See* N.C.R. App. P. 10(a)(4). As such, we dismiss such argument.

Ultimately, the question before us is whether the evidence, taken in the light most favorable to defendant, tended to show that defendant was intoxicated to such a profound degree that it was impossible for her to form the requisite intent to perform the crimes charged. We hold that, even under this standard, defendant's evidence did not meet the necessary burden. At most, defendant presented evidence of some intoxication, but she did not demonstrate that she was "so completely intoxicated and overthrown" as to render her "utterly incapable" of forming intent. As such, we hold that the trial court did not err in denying defendant's request for an instruction on voluntary intoxication or diminished capacity.

NO ERROR.

Judge TYSON concurs.

Judge BROOK dissents with separate opinion.

BROOK, J., dissenting.

I respectfully dissent. We view the evidence in the light most favorable to the defendant in assessing whether a jury instruction on voluntary intoxication was warranted. Here, there was substantial evidence of Defendant's intoxication. And there was substantial evidence that this rendered her incapable of forming the requisite intent to commit the charged offenses. Finally, there is a reasonable possibility that the jury would have reached a different result if instructed on voluntary intoxication. I would thus hold the trial court erred in denying Defendant's request for a jury instruction on voluntary intoxication and that, as a result, she is entitled to a new trial.

## I. Evidence Presented at Trial

On 22 November 2017, Lindsey Penninger and her husband Walter Penninger completed an appointment with their son at Family Solutions in Greensboro and discovered that their car had been broken into during their session. There were no signs of damage or forced entry to the car. Mrs. Penninger testified that, while she generally locks her car door, she might not have done so on this occasion. Mrs. Penninger noticed her laptop was missing,[1] and Mr. Penninger realized his firearm magazine was also missing. While they waited for law enforcement to arrive, Mr. Penninger went back inside the building where he came across Defendant, and he

---

[1] Once Mrs. Penninger returned home, she found her laptop and realized it had never been in the car.

asked her if she had seen anything. Mr. Penninger testified that Defendant answered that "she was somewhere having sex with a bunch of people on a table, and they have a video of it. And then somebody jumped off – some guy jumped off three stories and punched her."

Officer Jordan Fulp testified that she was dispatched to Family Solutions after receiving a call of an intoxicated subject and possible breaking and entering. When she arrived, Officer Fulp went inside the building to speak with Defendant, and "she automatically started talking about getting beat up the night before by a guy named Sebastian." Defendant then "pulled her pants down in front of everybody" to display a "bruise near her groin area." Officer Fulp testified that when officers tried to escort Defendant out of the building, "she immediately became loud[] and she did not want to follow instructions." As a result, officers put Defendant in handcuffs, but as they did so, Defendant started calling for an "Omar" and asked Omar to bring her wallet. Officer Fulp testified there was no one named Omar on the scene. Defendant also told Officer Fulp that she needed to get her bra from "the bedroom" and collect her purse before she could leave with Officer Fulp. Officer Fulp testified there were no bedrooms in the Family Solutions building and that Defendant did not have any belongings with her. Officer Fulp was finally able to place Defendant in her patrol car, where Defendant proceeded to yell, "I love you" several times and later urinated on herself.

Officer Fulp testified she and other officers searched for the items that Mr. and Mrs. Penninger reported stolen but were not able to locate them. Officer Fulp then tried to take the handcuffs off Defendant and release her, but "she didn't want to get out of [the] car" and had to be "coaxed" out. After Defendant exited the vehicle, Officer Fulp saw the gun magazine in Defendant's right front pocket. Officer Fulp asked Defendant what was in her pocket, and Defendant responded, "[O]h, it's my cellphone," and pulled out the magazine to show Officer Fulp. Defendant had previously told Officer Fulp that her phone had been broken the night before. Defendant also had a pair of pink sunglasses and a koozie that read, "Logan and Macy, Stokesdale, North Carolina, 5-5-2017" sticking out of the V-neck of her shirt during the entire encounter, both of which belonged to the Penningers and were taken from their car. Mrs. Penninger testified that the koozie was a party favor from her sister's wedding. Officer Fulp then arrested Defendant and transported her to jail.

Defendant's aunt, Francis Womble, testified that she received a call from her niece while she was in jail. Ms. Womble testified that Defendant "sounded delirious" and told her "she had gone to see Keith[] [a]nd she got in his car and started blowing his horn." Ms. Womble testified Defendant thought Keith had called the police and had her arrested. Ms. Womble testified that Keith lives in High Point.

II. Governing Case Law

- 3 -

As discussed by the majority, "[arguments] challenging the trial court's decisions regarding jury instructions are reviewed *de novo*." *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009). When an instruction is requested by counsel and the trial judge considers and refuses the request, the issue is preserved for appeal. *See Wall v. Stout*, 310 N.C. 184, 188-89, 311 S.E.2d 571, 574 (1984).

"Voluntary intoxication is not a legal excuse for a criminal act." *State v. Gerald*, 304 N.C. 511, 521, 284 S.E.2d 312, 318 (1981). It is a defense, however, "if the degree of intoxication is such that a defendant could not form the specific intent required for the underlying offense." *State v. Golden*, 143 N.C. App. 426, 430, 546 S.E.2d 163, 166 (2001). In order for the trial court to be required to give an instruction on voluntary intoxication, the defendant must "produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming the requisite specific intent." *State v. Ash*, 193 N.C. App. 569, 576, 668 S.E.2d 65, 70-71 (2008) (citation and marks omitted). The defendant may rely exclusively on evidence presented by the State. *State v. Herring*, 338 N.C. 271, 275, 449 S.E.2d 183, 186 (1994). Importantly, when assessing whether to give an instruction on intoxication, "courts must consider the evidence in the light most favorable to the defendant." *State v. Mash*, 323 N.C. 339, 348, 372 S.E.2d 532, 537 (1988) (citation omitted).

Our Court has found substantial evidence of intoxication based on witnesses' perceptions of the defendant. In *State v. Keitt*, 153 N.C. App. 671, 571 S.E.2d 35 (2002), *aff'd per curiam*, 357 N.C. 155, 579 S.E.2d 250 (2003), a witness testified that "at some time between 8:30 p.m. and 9:00 p.m. on the night of the break-in, the defendant was so intoxicated that he was unable to ride a bicycle or even walk home on his own." *Id.* at 677, 571 S.E.2d at 39. Another witness testified that when the defendant was brought home, he "was barely able to stand on his own." *Id.* The prosecuting witness testified that when defendant "was trying to leave her home, he had trouble navigating and fumbled with the door." *Id.* Finally, when the officer went to arrest "the defendant the next morning, he smelled alcohol on the defendant." *Id.* We held this evidence, viewed in the light most favorable to the defendant, showed that he was entitled to the voluntary intoxication instruction. *Id.*

Even if there is evidence of substantial intoxication, when a defendant takes "deliberate actions that suggest a clear purpose in carrying out" the crime, a voluntary intoxication instruction is not warranted. *See State v. Wilson-Angeles*, 251 N.C. App. 886, 897, 795 S.E.2d 657, 667 (2017). Taking steps "designed to hide [the] defendant's participation" in the crime, like disposing of evidence, demonstrates the defendant's ability to "plan and think rationally" and shows that a defendant is not so intoxicated as to be unable to form intent. *State v. Long*, 354 N.C. 534, 538-39, 557 S.E.2d 89, 92 (2001). Additionally, when a defendant takes "deliberate actions that

suggest a clear purpose in carrying out the" crime, it indicates a defendant has "some level of awareness of her surroundings." *Wilson-Angeles*, 251 N.C. App. at 897-98, 795 S.E.2d at 667. Deliberate actions include leaving "the scene, gather[ing] supplies, and return[ing] to . . . carry out the crime." *Id*.

On appeal, if the reviewing court determines the trial court erred in denying the defendant's request on voluntary intoxication, the question then becomes whether the trial court's error requires a new trial. *Keitt*, 153 N.C. App. at 677, 571 S.E.2d at 39.

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2017). This requires showing that there is a "reasonable possibility that a different result would have occurred had the instruction been given." *Keitt*, 153 N.C. App. at 678, 571 S.E.2d at 40. Where "the case is relatively close on the degree of . . . culpability . . . due to both the substantial evidence of defendant's intoxication at the time he committed the crime and . . . the manner of the [offense] and defendant's actions immediately before and after it[,] . . . there is a reasonable possibility that a different result would have obtained at trial" when an

intoxication instruction is erroneously omitted. *Mash*, 323 N.C. at 349-350, 372 S.E.2d at 538-39.

## III. Applying Case Law to these Facts

Taken in the light most favorable to Defendant, there was substantial evidence presented at trial supporting the conclusion that Defendant was intoxicated bunch, as a result, incapable of forming the requisite specific intent. Further, the trial court's failure to give the requested voluntary intoxication instruction prejudiced Defendant and thus requires a new trial.

### A. Intent

### i. Evidence of Intoxication

There was substantial evidence here, viewed in the light most favorable to Defendant, of her intoxication. As the majority acknowledges, "the original call to which police responded was 'a dispatch of an intoxicated subject.'" *Meader*, *supra* at ___. The intoxicated subject in question was Defendant, who witnesses described as "agitated," "irritated," and "delirious." Officer Fulp testified that "by first appearance [Defendant] . . . appeared to be either intoxicated or impaired by an illegal substance." Defendant also inexplicably told officers that a gun magazine in her pocket was a flip phone and seemed unable to answer questions directly. For instance, when Mr. Penninger asked Defendant if she had seen anything with regard to the breaking and entering, Defendant responded that "she was somewhere having sex with a bunch of

people on a table, and they have a video of it. And then somebody jumped off – some guy jumped off three stories and punched her." Also, when officers arrived and began speaking with her, Defendant pulled down her pants, began calling for "Omar," and said she "needed to get her bra from the bedroom." Finally, Defendant urinated on herself while in the police car.

The majority asserts "that th[e] [evidence of intoxication] paints an incomplete picture of the evidence at trial." *Meader*, *supra* at ___. Specifically, the majority states that while the evidence showed Defendant was agitated, disoriented, and intoxicated or impaired, she was also "fairly cooperative." *Id.* However, to "view the evidence in the light most favorable to the defendant" means if there is evidence of agitation, disorientation, intoxication or impairment, then Defendant was agitated, disoriented, and intoxicated or impaired—this despite evidence that Defendant was also somewhat cooperative. *See Mash*, 323 N.C. at 348, 372 S.E.2d at 538 ("While there is some evidence to the contrary, when viewed in the light most favorable to defendant, the evidence of defendant's state of intoxication is enough to require the voluntary intoxication instruction."). Relatedly, the majority's emphasis on the absence of information about how much and when Defendant consumed intoxicating substances here is misplaced. Such information is not necessarily dispositive. *See, e.g.*, *Kiett*, 153 N.C. App. at 677-78, 571 S.E.2d at 39-40 (holding defendant was entitled to voluntary intoxication instruction despite lack of evidence as to how much

and when defendant consumed alcohol). And fixating on it in this instance elevates form over substance; everyone—the State, Officer Fulp, the Penningers, and Ms. Womble—agrees Defendant was intoxicated.

### ii. Evidence of Lack of Requisite Specific Intent

Viewed in the light most favorable to Defendant, the evidence in this case also shows a distinct lack of deliberation and purpose. Defendant here made no attempt to leave the scene of the crime. She took no steps to hide her participation in the crime. With seemingly no regard for the consequences of her actions, she showed officers the items that had been taken from the car. Nor did Defendant take deliberate actions that indicated a level of awareness of her surroundings. Two of the three items Defendant took from the Penningers' car had little to no value, and Defendant told law enforcement that the gun magazine in her pocket was a flip phone. Furthermore, according to both Officer Fulp's and Ms. Womble's testimony, Defendant either thought she was with Keith in High Point or in an unknown house with Omar.

All of this stands in stark contrast to the case central to the majority's analysis, *State v. Wilson-Angeles*. While there was evidence in *Wilson-Angeles* that defendant "was intoxicated to some degree," 251 N.C. App. at 898, 795 S.E.2d at 667, she also "quickly handed off a container of alcohol as law enforcement approached her, [which] indicat[ed] some level of awareness of her surroundings," *id.* The defendant in

*Wilson-Angeles* also took "deliberate actions that suggest[ed] a clear purpose in carrying out the attempted arson." *Id.* at 897, 795 S.E.2d at 667. Specifically, she had to "leave the scene, gather supplies, and return to [the prosecuting witness's] door to carry out the crime" of making a Molotov cocktail. *Id.* at 898, 795 S.E.2d at 667.

## B. Prejudice

Defendant also has shown "a reasonable possibility that a different result would have occurred had the instruction been given." *Keitt*, 153 N.C. App. at 678, 571 S.E.2d at 39. First and foremost, and as noted above, the evidence of Defendant's profound intoxication as well as her actions around the time of the offense raised serious questions about whether Defendant could form the requisite intent. *Mash*, 323 N.C. at 349-350, 372 S.E.2d at 538-39. Even without the requested instruction, the jury sent two questions during deliberations showing they were struggling with the issue of intent. The first jury question stated that the jury was evenly split on the issue of intent. The trial judge instructed the jury that it must reach a unanimous verdict. The jury next requested a definition for "utterly incapable" in response to the State's closing argument that Defendant was not "utterly incapable" of forming

the requisite intent for the crimes charged. In short, there is a reasonable possibility that there would have been a different result if the jury had been properly instructed.[2]

## IV. Conclusion

Viewing the evidence in the light most favorable to Defendant, there was substantial evidence of intoxication such that her "mind and reason were so completely intoxicated and overthrown as to render h[er] utterly incapable of forming [the requisite intent]." *State v. Shelton*, 164 N.C. 513, 518, 79 S.E. 883, 885 (1913), *overruled on other grounds by State v. Oakes*, 249 N.C. 282, 106 S.E.2d 206 (1958). Further, there is a reasonable possibility that a different result would have been reached at trial if the requested instruction had been given. I would, therefore, reverse and remand for a new trial.

---

[2] The majority also cites *State v. Ash* in support of its assertion that an intoxication instruction was not necessary here. *Ash* is readily distinguishable as, among other things, the alleged error in that case was not preserved, meaning defendant needed to show plain error. 193 N.C. App. at 575, 668 S.E.2d at 70. Defendant here need show only a reasonable possibility that the error at issue produced a different result—a far less deferential standard.